(C.D. 2155)

MUTUAL SUPPLY CO. *v.* UNITED STATES

## United States Customs Court, Third Division

(Decided February 23, 1960)

*Lawrence & Tuttle (George R. Tuttle, Jr., Edward N. Glad*, and *Barnes, Richardson & Colburn* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Richard E. FitzGibbons, Murray Sklaroff*, and *Margaret M. Kiley*, trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

DONLON, Judge: The issue in these two cases, consolidated for purposes of trial, is whether certain vegetable preparations are pickled. Plaintiff claims they are. If so, they are entitled to the benefit of the 17½ percent modified rate under the Presidential proclamation of May 13, 1950 (T.D. 52476), pursuant to the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade (T.D. 52373), effective May 30, 1950, unless *eo nomine* excluded. The provision for modified rate, under paragraph 775, is as follows:

Vegetables (including horseradish), if pickled, or packed in salt
 or brine and not specially provided for (except cucumbers and
 onions) _____ 17½% ad val.

The collector assessed duty at 35 percent under the unmodified provision of paragraph 775, the prior GATT modification (T.D. 51802), which was made effective by Presidential proclamation of May 4, 1948 (T.D. 51909), having been withdrawn by Presidential proclamation of October 12, 1950 (T.D. 52587).

The protests relate to the liquidation of several different vegetable preparations. All were imported from Japan. Plaintiff has limited its case to four such preparations, and we deem this to be an abandonment of the protests as to all other merchandise.

The four vegetable preparations, as to which plaintiff argues erroneous classification by the collector, are included in the protests and entries, as follows:

| Protest No. | Entry No. | Merchandise, invoice description |
|---|---|---|
| 239937–K | 6287 | 10 casks pickled vegetables, Shirouri Nara Zuke |
| do | 17114 | 10 casks pickled vegetables, Shirouri Nara Zuke |
| do | 18010 | 125 c/s canned pickled vegetables, Tokyo Zuke |
| do | do | 25 c/s canned pickled vegetables, Fukujin Zuke |
| do | 2133 | 10 casks pickled vegetables, Shirouri Nara Zuke |
| 292393–K | 20279 | 5 cases canned pickled radish, Takuwan Zuke |
| do | do | 20 cases canned pickled vegetables, Tokyo Zuke |

It will be observed that the rate provision which plaintiff invokes in its protests excludes from the benefit of rate reduction vegetables, even if pickled or packed in salt or brine provided either if they are specially provided for or if they are cucumbers or onions. The vegetables of the merchandise designated as Tokyo Zuke and Fukujin Zuke are stipulated to consist of radish, eggplant, sword beans, bamboo shoots, and beef steak leaves. (R. 41.) A chemist's report in evidence (exhibit 3) identifies the merchandise designated as Takuwan Zuke as radish. There is testimony that the merchandise designated as Shirouri Nara Zuke is white cucumber. (R. 6.) The vegetable contents of the preparations are named in the labels of representative merchandise which plaintiff introduced into evidence. The labels state that certain preparations are radishes, cut in various ways, and that Shirouri Nara Zuke is cucumbers.

We find no special tariff provision for pickled radishes or the other described vegetables, except the cucumbers. The merchandise Tokyo Zuke, Fukujin Zuke, and Takuwan Zuke is not specially provided for. As to pickled cucumbers, the paragraph 775 modification on which plaintiff relies specifically excludes cucumbers, and another paragraph 775 modification, not a part of the protest claims, *eo nomine* includes cucumbers. It is not necessary, therefore, for us now to decide whether the merchandise Shirouri Nara Zuke (or Shir Ouri Narazuke) is pickled. It is described in the evidence as cucumbers. Plaintiff's brief concedes that it is cucumbers. The paragraph 775 modification on which plaintiff's protests rely excludes cucumbers from the benefit of rate reduction, even if they are pickled, as plaintiff claims that they are. The protest is overruled as to the merchandise Shirouri Nara Zuke, on our finding that it is cucumbers.

The several other vegetable preparations above enumerated are entitled to the benefit of the claimed rate modification, *if* they are pickled.

Plaintiff introduced testimony. Defendant introduced no testimony, but did cross-examine plaintiff's witnesses. Plaintiff also introduced into evidence certain exhibits. Defendant introduced none.

Plaintiff filed a brief. Defendant requested the privilege of having a period of 60 days after service of plaintiff's brief, within which to file a brief for defendant. The judge who presided at the trial in San Francisco granted defendant's request. When the allotted period of 60 days had elapsed, defendant then requested that an additional period of 30 days be granted it, in which to prepare and file its brief. This request, too, was granted. Nearly 5 months after the trial record had become available to it, and 3 months after service of plaintiff's brief, defendant advised the court that "upon consideration of the record made and the brief filed by counsel" defendant no longer desired to file a brief.

Briefs are intended to assist the court. We do not infer that defendant's tactics here are tantamount to a confession of judgment, but the conduct is, to say the least, of no assistance to the court in analyzing the facts and the law of the case, as defendant views them, if it is indeed seriously controverting the protest claims.

Plaintiff contends that these vegetables were processed by lactic acid fermentation before they were preserved, and that such lactic acid fermentation, as described in the evidence plaintiff adduced, constitutes the pickling of the vegetables within the sense of the paragraph 775 modification, *supra*, on which plaintiff relies.

It appears from the evidence of record that, in the processing of the cucumbers *only*, sake lees, or sake dregs, were used to induce fermentation. Sake is alcohol. Inasmuch as we have overruled the protest as to cucumbers on the ground that they are *eo nomine* excluded from the benefit of the claimed rate modification, it is not necessary for us to consider whether alcohol fermentation of cucumbers is pickling. In the processing of the other vegetables, salt was the ingredient described in the testimony as the pickling agent. (Soy sauce, when used, was part of a finishing process; testimony does not connect soy sauce to the fermentation process.)

From defendant's cross-examination, which is all that we have before us from which to deduce what defendant's position is, it appears that defendant does not argue against the claim that vegetables which have been subjected to the described lactic acid fermentation *before canning* are pickled vegetables. In any case, testimony adduced by plaintiff is clear as to that point, and this testimony has not been contradicted.

What defendant appears to question is whether these vegetables really were processed by lactic acid fermentation *before* they were canned. This is the line of defendant's cross-examination, at least of plaintiff's expert witness Cruess. (R. 43.)

Plaintiff introduced in evidence a report of the United States Customs Laboratory at New York (exhibit 6) and reports of Curtis & Tompkins, Ltd., analytic research chemists in San Francisco, Calif. (Exhibits 7, 8.) The Customs Laboratory report is a chemical analysis of all four food preparations. The Curtis & Tompkins, Ltd., report describes chemical analyses of samples only of the merchandise Tokyo Zuke and Fukujin Zuke. All analyzed samples, while they were not taken from the respective merchandise in issue, were stipulated to be identical to such merchandise. (R. 18.)

Mr. Susumu Togasaki, who has been associated for 30 years with Mutual Supply Co., importer of Japanese food, testified for plaintiff as to the method by which Tokyo Zuke, Fukujin Zuke, and Takuwan Zuke are prepared. (R. 3.) He had been in Tokyo, where these products are manufactured, and had seen them "put up." He testi-

fied from his own knowledge, saying that the vegetables were dehydrated, then sliced, after which salt was added and a "weight" was put on them. While Mr. Togasaki was not precise as to how long the sliced vegetables were kept in salt under weight in each preparation, he stated that it was usually about 3 days. (In the case of the cucumbers he stated they were kept in alcohol for "maybe three months.") The liquid was then drained off. From this point on, preparation differs. In some of the products, soy sauce is introduced before the vegetables are canned, following the described brine treatment. (R. 8, 9, 10, 11.)

Mr. Togasaki was clear that the vegetables were sliced and processed with salt under weight for several days, *before canning*.

Mr. Marcus Weinberg, a chemist in the employ of Curtis & Tompkins, Ltd., who actually made the chemical analyses of the specimen vegetables (exhibits 7, 8), testified and was cross-examined. Mr. Weinberg has been analyzing vegetables and foods for about 28 years. He analyzed the Tokyo Zuke and Fukujin Zuke which are the subject of the Curtis & Tompkins, Ltd., reports in evidence, *supra*. (R. 17.) His analysis was designed to determine whether Tokyo Zuke and Fukujin Zuke were preserved by a pickling process. (R. 19.) In his opinion, which was not shaken on cross-examination, Tokyo Zuke and Fukujin Zuke were pickled by reason of the added salt and the fixed acid in the vegetables (R. 28), which the Curtis & Tompkins, Ltd., report describes as lactic acid. (R. 24.)

Dr. William Vere Cruess, plaintiff's expert witness from the Food Technology Department, College of Agriculture, University of California, testified that, in his opinion, based on the Curtis & Tompkins, Ltd., reports in evidence and on his tasting the products Tokyo Zuke and Fukujin Zuke and on his long experience with fermentations of various kinds, both Tokyo Zuke and Fukujin Zuke had been fermented, that they had a "pickled" taste, usual to lactic acid fermentation, which is quite different from the taste of fresh vegetables which have been canned directly in brine and lactic acid without prior pickling.

Dr. Cruess stated that from the chemical analysis alone it would not be possible to know whether the vegetables were pickled before canning or were canned fresh with brine and lactic acid added. Either might be the case, if reliance were solely on the analysis. However, the taste convinced him that pickling preceded canning. Witness Togasaki testified, in describing the preparation of the merchandise, that pickling did precede canning.

There appears to be no explanation as to why plaintiff's chemical analyses and expert testimony did not extend to the merchandise Takuwan Zuke, but only to Tokyo Zuke and Fukujin Zuke. However,

plaintiff's witness Togasaki testified to similar processing of Taku-wan Zuke.

We find that the vegetables Tokyo Zuke, Fukujin Zuke, and Taku-wan Zuke were sliced and packed in salt, under weight, for several days before canning, and that in this process the vegetables were pickled, within the intent of the rate modification provision of paragraph 775, *supra*, on which plaintiff relies. As to such vegetables, the protests are sustained.

For the reason we have earlier stated, the protests are overruled as to the vegetable Shirouri Nara Zuke.

As to all other merchandise, the protests, having been abandoned, are dismissed.

Judgment will be entered accordingly.